1

2

3

4

5

6                        UNITED STATES DISTRICT COURT

7                              DISTRICT OF NEVADA

8                                    * * * * *

9    CATHY BENSON, *et al*,

10        Plaintiffs,                                3:16-cv-00388-LRH-WGC

11        v.

12   HG STAFFING, LLC; MEI-GSR                       <u>ORDER</u>
     HOLDINGS, LLC d/b/a GRAND SIERRA
13   RESORT; and DOES 1 through 50, inclusive,

14        Defendants.

15

16        Before the court is Defendants' motion to dismiss. ECF No. 15. Plaintiffs filed a response

17   (ECF No. 18), to which Defendants replied (ECF No. 19). Because Plaintiff Cathy Benson

18   settled related claims against Defendants in a separate case before a different court within this

19   district, claim preclusion applies. The court will therefore dismiss her from this action. However,

20   Defendants' arguments regarding dismissal of the remaining plaintiffs are without merit and

21   Defendants' motion will be denied as to these plaintiffs.

22   **I.    Background**

23        Plaintiffs are room attendants formerly employed by Defendants HG Staffing, LLC ("HG

24   Staffing") and MEI-GSR Holdings, LLC ("GSR"). ECF No. 14 at 3–4. Plaintiffs each bring one

25   claim of failure to pay overtime under the Fair Labor Standards Act ("FLSA").[1] *See* 29 U.S.C. §

26

27   ────────────────────

28   [1]  After Plaintiffs filed their original complaint in this action (ECF No. 1), Defendants moved to
     dismiss (ECF No. 12). Instead of responding, Plaintiffs filed their First Amended Complaint
     ("FAC"), the operative complaint in this action. *See* ECF No. 14. Defendants then moved to

207. They allege that Defendants required all room attendants to "engage in pre-shift work activities off the clock and without compensation." ECF No. 14 at 4. Specifically, Plaintiffs allege that Defendants "required them to arrive 20 minutes or more prior to their regularly scheduled start time to present themselves to their shift supervisors for room/floor assignments, a uniform inspection, and to retrieve tools necessary to complete their work tasks . . . ." *Id.*

Two related suits precede the instant action. Because both suits are relevant to Defendants' motion to dismiss, the court will briefly describe their procedural history and substance.

### A.  Sargent action: *Sargent v. HG Staffing*, 3:13-cv-00453-LRH-WGC

In the first action, Tiffany Sargent and other individuals formerly employed by Defendants filed suit against the business entities in Nevada state court. Defendants then removed that action to this court in August 2013. *Sargent v. HG Staffing*, 3:13-cv-00453-LRH-WGC ("Sargent action"). In that suit, Sargent and her fellow plaintiffs alleged that Defendants' wage practices violated several provisions of the FLSA and Nevada law. *Sargent v. HG Staffing, LLC*, 171 F. Supp. 3d 1063, 1070 (D. Nev. 2016).

As in the instant action, the plaintiffs alleged that Defendants, among other purportedly improper practices, required employees to perform certain tasks before or after their shifts and thus without compensation. *Sargent*, 3:13-cv-00453-LRH-WGC at (ECF No. 47 at 5). The plaintiffs therefore brought an FLSA collective action premised in part on Defendants' alleged failure to pay overtime wages for the time the plaintiffs spent engaging in off-the-clock work activities. *Id.* at (ECF No. 47 at 11). Cathy Benson, the lead named plaintiff in the instant action, opted into the collective action along with numerous other plaintiffs.

Defendants eventually moved to decertify the collective action. *Id.* at (ECF No. 162). After analyzing the relevant factors, the court found that the plaintiffs were not "similarly situated," as required under the FLSA. *Sargent*, 171 F. Supp. 3d at 1079–85. The court therefore decertified the class on March 22, 2016, and the action is on-going.

---

dismiss the FAC. ECF No. 15. The court will therefore deny the original motion to dismiss (ECF No. 12) as moot.

1

**B.     Benson I: *Benson v. HG Staffing*, 3:16-cv-00191-RCJ-VPC**

2        Several weeks after the Sargent action's decertification, Cathy Benson, along with six

3    other plaintiffs that had originally opted into the Sargent action, again filed suit against HG

4    Staffing and GSR in Nevada state court. Defendants once again removed the suit to federal court,

5    but the case was assigned to Judge Robert C. Jones. *Benson v. HG Staffing*, 3:16-cv-00191-RCJ-

6    VPC ("Benson I"). Unlike the prior suit, the plaintiffs only alleged state-law claims, which were

7    premised on many of the same factual allegations as the Sargent action. *See Id*. at (ECF No. 7).

8        All seven plaintiffs eventually accepted offers of judgment from Defendants. *Id*. at (ECF

9    Nos. 16–22). The clerk of the court consequently entered judgment in favor of each plaintiff on

10    June 6, 2016. *Id*. at (ECF Nos. 23–29).

11

**C.     Instant action ("Benson II") and parallel actions**

12        Several weeks later, the Benson I plaintiffs filed five separate actions against both HG

13    Staffing and GSR in this court, including the instant action. *See Benson v. HG Staffing*, 3:16-cv-

14    00388-LRH-WGC ("Benson II" or "instant action"); *Corral v. HG Staffing*, 3:16-cv-00386-

15    LRH-WGC; *Ramirez v. HG Staffing*, 3:16-cv-00318-LRH-WGC; *Reader v. HG Staffing*, 3:16-

16    cv-00387-LRH-WGC; *Reader v. HG Staffing*, 3:16-cv-00392-LRH-WGC. While some of the

17    plaintiffs from Benson I are lead named plaintiffs in their respective actions,[2] other individuals

18    formerly employed by Defendants also filed suit in each action. It appears that most if not all of

19    these plaintiffs in the instant and parallel actions were opt-in plaintiffs in the Sargent action.

20        Defendants have now moved to dismiss the instant action.[3]

21    ///

22    ///

23

24    [2] Two of the Benson I plaintiffs, Marlene Sanchez and Imogen Holt, are not lead named
25    plaintiffs but joined two of the five parallel actions: *Ramirez v. HG Staffing*, 3:16-cv-00318-
      LRH-WGC (Marlene Sanchez) and *Reader v. HG Staffing*, 3:16-cv-00392-LRH-WGC (Imogen
26    Holt). Holt also joined another parallel action: *Reader v. HG Staffing*, 3:16-cv-00387-LRH-
      WGC.

27    [3] Because the parallel actions are separate cases, this order only addresses the instant action,
28    *Benson v. HG Staffing*, 3:16-cv-00388-LRH-WGC. The parallel actions are referenced only for
      context.

1  **II.    Legal standard**

2          To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the

3  Federal Rule of Civil Procedure 8(a)(2) notice-pleading standard. *Mendiondo v. Centinela Hosp.*

4  *Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and

5  plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

6  The 8(a)(2) pleading standard does not require detailed factual allegations, but a pleading that

7  offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'"

8  will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

9  550 U.S. 544, 555 (2007)).

10         To satisfy the plausibility standard, 8(a)(2) requires a complaint to "contain sufficient

11 factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

12 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual

13 content allows the court to draw the reasonable inference, based on the court's "judicial

14 experience and common sense," that the defendant is liable for the misconduct alleged. *See id.* at

15 678–79. The plausibility standard "is not akin to a probability requirement, but it asks for more

16 than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts

17 that are merely consistent with a defendant's liability, it stops short of the line between

18 possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

19         In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as

20 true. *Id.* The "factual allegations that are taken as true must plausibly suggest an entitlement to

21 relief, such that it is not unfair to require the opposing party to be subjected to the expense of

22 discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

23 Moreover, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the

24 elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*,

25 572 F.3d 962, 969 (9th Cir. 2009) (brackets in original) (internal quotation marks omitted)

26 (citing *Iqbal*, 556 U.S. at 681). The court discounts these allegations because "they do nothing

27 more than state a legal conclusion—even if that conclusion is cast in the form of a factual

28 allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681). "In sum, for a complaint to survive a motion to

1  dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must

2  be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

3  **III.   Discussion**

4      Defendants first argue that, because Plaintiff Benson accepted an offer of judgment in

5  Benson I, claim preclusion (i.e., res judicata) bars her instant claim.[4] Defendants do not appear to

6  argue that claim preclusion affects the remaining plaintiffs in this action, as they were not party

7  to the Benson I action. However, Defendants contend that all of the other plaintiffs' claims

8  should be dismissed because (1) Plaintiffs have failed to sufficiently state a claim for failure to

9  pay overtime and (2) issue preclusion bars this collective action due to the court's decertification

10  of the Sargent action's FLSA collective action. The court will address each issue in turn.

11      **A.    Claim preclusion bars Plaintiff Benson's claim**

12      "Res judicata, or claim preclusion, 'bars any lawsuits on any claims that were raised or

13  could have been raised in a prior action.'" *Fed. Trade Comm'n v. Garvey*, 383 F.3d 891, 897 (9th

14  Cir. 2004) (quoting *Providence Health Plan v. McDowell*, 361 F.3d 1243, 1249 (9th Cir. 2004)).

15  "Claim preclusion applies if there is (1) an identity of claims; (2) a final judgment on the merits;

16  and (3) identity or privity between parties." *Id*. (internal quotation marks omitted). "The central

17  criterion in determining whether there is an identity of claims between the first and second

18  adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'"

19  *Frank v. United Airlines, Inc*., 216 F.3d 845, 851 (9th Cir. 2000) (quoting *Costantini v. Trans

20  World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)). "It is immaterial whether the claims

21  asserted subsequent to the judgment were actually pursued in the action that led to the judgment;

22  rather, the relevant inquiry is whether they could have been brought." *United States ex rel.

23  Barajas v. Northrop Corp*., 147 F.3d 905, 909 (9th Cir. 1998).

24  ///

25

---

26  [4] One of Defendants' section headings asserts that claim preclusion bars "Plaintiff Shenna
   Corral's" claim. ECF No. 15 at 3. This is clearly a typographical error, as Shenna Corral is not a
27  plaintiff in this action—but is a lead named plaintiff in one of the parallel cases—and the
   section's text correctly refers to Cathy Benson.
28

Here, the Benson I action (3:16-cv-00191-RCJ-VPC) and the instant action meet all three prongs and result in claim preclusion for Cathy Benson. Turning first to the last prong, there is clearly privity. Because Benson is a plaintiff in both cases and HG Staffing and GSR are the defendants, the interests are identical between the two cases. *See Va. Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1247 (9th Cir. 1998) ("It is the identity of interest that controls in determining privity, not the nominal identity of the parties." (quotation marks and citation omitted)). Moreover, it is undisputed that Benson's acceptance of Defendants' offer of judgment resulted in final judgment on the merits, as evidenced by the clerk of the court entering judgment in the case.

Finally, there is an identity of claims because Benson asserted a claim of failure to pay overtime in violation of Nevada law based in part on the same employer conduct alleged in this action. *See Benson v. HG Staffing*, 3:16-cv-00191-RCJ-VPC at (ECF No. 7 at 13–14). Claim preclusion bars a plaintiff from re-litigating the same case based solely on a different legal theory. *E.g.*, *Clark v. Haas Grp., Inc.*, 953 F.2d 1235, 1239 (10th Cir. 1992) (finding that claim preclusion applied when a plaintiff settled an FLSA claim against her employer and then later brought a separate suit claiming violations of the Equal Pay Act and ADEA based on the same alleged conduct). This principle is especially pronounced in this case, where Benson's legal theories are merely state and federal-law duplicates of one another.

Nonetheless, Plaintiffs argue that claim preclusion does not apply because the offer of judgment in Benson I resulted in judgment in favor of Benson and against Defendants. ECF No. 18 at 8. Plaintiffs assert that a "judgment in favor of a plaintiff is *res judicata* on liability against Defendants" only. *Id*. However, Plaintiffs cite no authority in support of this argument, and it is without merit. Claim preclusion applies if the above-cited prongs are met, as they are in the instant case. The court therefore finds that Plaintiff Cathy Benson is barred from asserting her present FLSA claim and will be dismissed from this action. This ruling does not affect the remaining plaintiffs, as they were not party to the Benson I action.

///

///

### B.    Plaintiffs have sufficiently stated an FLSA overtime claim

Defendants argue that Plaintiffs[5] have failed to sufficiently state a claim for failure to pay overtime because Plaintiffs have not identified "any one week in which any one plaintiff was paid less than [the] wage required by the FLSA . . . ." ECF No. 15 at 5. Plaintiffs counter that they have alleged that they all regularly worked 40 hours each week—consisting of 5 shifts of 8 hours—and that Defendants required them to participate in at least 20 minutes of uncompensated work-related activities each and every shift. ECF No. 18 at 4–5. Plaintiffs also highlight the spreadsheet that they attached to their operative complaint, which lists each plaintiff's hourly pay rate, the amount of uncompensated overtime worked in a regular week, and the amount of overtime pay owed for a week of work.[6] *See* ECF No. 14-1.

In *Landers v. Quality Communications*, the Ninth Circuit addressed the level of specificity required to adequately plead an FLSA overtime claim in light of the *Twombly*/*Iqbal* heightened pleading standard. 771 F.3d 638 (9th Cir. 2014), as amended (Jan. 26, 2015). The *Landers* court "decline[d] to make the approximation of overtime hours the *sine qua non* of plausibility for claims brought under the FLSA." *Id*. at 641. "Recognizing that employers are in control of 'most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule,' the court held that plaintiffs in FLSA 'cases cannot be expected to allege 'with mathematical precision,' the amount of overtime compensation owed by the employer.'" *Johnson v. Pink Spot Vapors, Inc*., No. 2:14-CV-1960-JCM-GWF, 2015 WL 433503, at *2 (D. Nev. Feb. 3, 2015) (quoting *Landers*, 771 F.3d at 641–46). Nonetheless, the court further held that plaintiffs "should be able to allege facts demonstrating there was at least

///

---

[5] The court will continue to collectively refer to the remaining plaintiffs in this case as "Plaintiffs."

[6] Plaintiffs' spreadsheet is not based on a specific work week. Rather, Plaintiffs have multiplied 20 minutes, the amount of time they allege they worked off the clock each shift, by 5, the number of shifts they regularly worked a week, to arrive at 1.67 hours of overtime worked a week. Plaintiffs then multiplied this number by their individual overtime rate—i.e., 1.5 times their listed individual pay rate—to calculate their individual amount of overtime pay owed for a week. *See* ECF No. 14 at 5 (explaining this calculation).

one workweek in which they worked in excess of forty hours and were not paid overtime

wages." *Landers*, 771 F.3d at 646.

Shortly after *Landers*, another court within this district addressed how the holding

applied to a case in which the plaintiffs, rather than indicating a specific week in which they did

not receive overtime pay, alleged that they were required to participate in a specific amount of

unpaid off-the-clock activities each shift. *Levert v. Trump Ruffin Tower I, LLC*, No. 2:14–CV–

01009–RCJ, 2015 WL 133792 (D. Nev. Jan. 9, 2015) ("Plaintiffs do not identify a specific

workweek during which they worked in excess of 40 hours, but instead allege that 'each and

every day' they were required to perform 115 minutes of additional work-related activities.").

The court held

> that Plaintiffs' failure to allege a *specific* workweek during which they worked in
> excess of 40 hours is not necessarily fatal to their claim. After all, Plaintiffs allege
> that they worked off-the-clock each and every day. So, if Plaintiffs were to assert
> that they worked more than eight hours on any given day and that they were
> always assigned to work at least five days a week, then that might be enough for
> the Court to infer that in every workweek during their employment, Plaintiffs
> were working more than 40 hours and are entitled to the appropriate
> compensation. Thus, in Plaintiffs' situation, identifying individual weeks may be
> unnecessary to satisfy the *Iqbal/Twombly* standard since Plaintiffs would be
> demonstrating that the overtime violations were occurring every week during their
> employment and not only on specific weeks.

*Id.* at *5. However, the court ultimately found the complaint defective because it did not allege

that all the plaintiffs "were assigned at least five shifts of eight hours each workweek . . . ." *Id.* at

*4. The court would have therefore needed to assume this fact in order for the plaintiffs to have

adequately pled that their uncompensated activities constituted unpaid overtime. *Id.* The court

therefore dismissed the complaint but granted the plaintiffs leave to amend. *Id.* at *5; *see also*

*Pink Spot Vapors*, 2015 WL 433503, at *2–4 (discussing both *Landers* and *Levert* and applying

the decisions to a case involving plaintiffs alleging consistent off-the-clock work).

This court agrees with the analysis in *Levert*. Plaintiffs bringing an FLSA overtime claim

satisfy the pleading standard set forth in *Twombly*, *Iqbal*, and *Landers* when they allege that they

///

///

(1) work at least 40 hours a week "on the clock" and (2) are required to perform specific tasks "off the clock" (i.e., without compensation) for a specific length of time each shift.[7]

The court finds that Plaintiffs in the instant action have met that burden. They allege that "Plaintiff Benson and each and every other named Plaintiff were employed by Defendants as room attendants and were scheduled for, and regularly worked, five (5) shifts per week, at least eight (8) hours per shift, and forty (40) hours per workweek . . . ." ECF No. 14 at 4. As discussed above, Plaintiffs further allege that Defendants "required them to arrive 20 minutes or more prior to their regularly scheduled start time to present themselves to their shift supervisors for room/floor assignments, a uniform inspection, and to retrieve tools necessary to complete their work tasks . . . ." *Id*. Plaintiffs have also provided Defendants an estimate of how much unpaid overtime per week each individual plaintiff is seeking based on each individual's specific hourly rate.[8] The court finds that these details sufficiently state an FLSA overtime claim and satisfy the purpose of FRCP 8(a), which is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

### C.   Issue preclusion does not bar Plaintiffs' claims

Defendants argue that issue preclusion (i.e., collateral estoppel) bars Plaintiffs from bringing an FLSA collective action because the court decertified the collective action in the Sargent action. Issue preclusion bars successive litigation of an issue of law or fact even if the issue recurs in the context of a different claim. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

---

[7]  Alternatively, plaintiffs could state a plausible claim if they work less than 40 hours a week but allege that their total amount of uncompensated work per week consistently brings their total hours worked—i.e., both on and off the clock—past 40 hours a week.

[8]  Defendants argue that Plaintiffs' operative complaint only discusses Cathy Benson and "merely lumps all plaintiffs together, providing no way for Defendants to meaningfully evaluate each of the claims made by each of the eight-one (81) Plaintiffs." ECF No. 15 at 6. While the complaint collectively discusses all of the plaintiffs, the court finds that Defendants' conclusion is inaccurate. Although the complaint uses Plaintiff Benson as an example, it alleges that her fellow plaintiffs worked "the same or similar schedules" and were affected by the same policy that resulted in uncompensated overtime. ECF No. 14 at 4–5. Therefore, Plaintiffs are alleging that Defendants' policies required *each* suing employee to perform 20 minutes of tasks each and every shift without compensation and in excess of their 40 hours of work each week. Plaintiffs even specify how these 20 minutes were spent before each shift. Based on these details, Defendants have fair notice of Plaintiffs' claims.

"Where a federal court has decided the earlier case, federal law controls the [issue-preclusion] analysis." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004). "Three factors must be considered before applying collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Id.* (internal quotation marks omitted) (quoting *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996)).

The court finds that Defendants fail to demonstrate that even the first prong is met. In the Sargent action, this court found that the conditionally-certified class warranted decertification based on an analysis of all three relevant factors. *Sargent*, 171 F. Supp. 3d at 1079–85. For example, the court found that there were disparate factual and employment settings based in part on the fact that "Plaintiffs worked in over 50 different departments and sub-departments, including more than 70 different positions." *Id*. at 1081. Specifically, the court held that "a blanket statement that Defendants had a policy of suffering or permitting work without compensation is not enough to demonstrate a single policy [sufficient to show that Plaintiffs were similarly situated], as Plaintiffs were employed in many different departments, under many different supervisors, and allege a variety of uncompensated activities, including picking up equipment, attending meetings, changing uniforms, and attending dance classes." *Id*. at 1080.

Here, Plaintiffs have attempted to form a narrower class composed solely of room attendants who all base their overtime claims on the same alleged policy of being required to present themselves to their shift supervisors 20 minutes before their shifts began. Therefore, the court does not find that its decision to decertify the class in the Sargent action presents the same issue as the prospective certification of the instant action's collective action. Moreover, Defendants' argument would result in automatically barring plaintiffs who opt into a collective action that is later decertified from attempting to litigate their claims in the future as a properly-

///

///

constructed collective action (i.e., one composed of similarly-situated plaintiffs). Defendants do not cite to any authority that would persuade the court that such a bar should apply.[9]

The court therefore finds that issue preclusion does not apply. And because the court has found that Plaintiffs sufficiently stated a claim for failure to pay overtime, it will deny Defendants' motion to dismiss as to the remaining plaintiffs.

**IV.   Conclusion**

IT IS THEREFORE ORDERED that Defendants' motion to dismiss Plaintiffs' First Amended Complaint (ECF No. 15) is **GRANTED in part** as to Plaintiff Cathy Benson. Plaintiff Benson is dismissed from this action.

IT IS FURTHER ORDERED that Defendants' motion to dismiss Plaintiffs' First Amended Complaint (ECF No. 15) is **DENIED in part** as to the remaining named plaintiffs.

IT IS FURTHER ORDERED that Defendants' motion to dismiss Plaintiffs' original complaint (ECF No. 12) is **DENIED as moot**.

IT IS SO ORDERED.


DATED this 1st day of March, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[9] In support of their argument, Defendants cite a case in which the district court dismissed a second FLSA action based on issue preclusion after the first action was decertified. *See Belle v. Univ. of Pittsburgh Med. Ctr.*, No. CIV.A. 13-1448, 2014 WL 4828899, at *1 (W.D. Pa. Sept. 29, 2014). However, the court finds *Belle* factually distinct from the instant case. There, 95.32% of the opt-in plaintiffs in the first action were plaintiffs in the second action, leading the court to conclude that the second case was a "redux" of the first. *Id*. The court also noted that the second action was premised on the same legal theories stemming from the same employer policies as the first action. *Id*. at *2. The court thus held that there was "no doubt that identical factual and legal issues would incur." *Id*. As discussed above, this instant action is based on a narrower proposed class than the Sargent action and Plaintiffs highlight an employer policy specific to that class.